# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA ELLIS, | : | |
|    Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | No. 09-1212 |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|    Defendant | : | |

## REPORT AND RECOMMENDATION

TIMOTHY R. RICE                                                                                       April 29, 2010
U.S. MAGISTRATE JUDGE

Resolution of this case depends on whether the Administrative Law Judge ("ALJ") appropriately considered evidence of Linda Ellis' obesity in rejecting her application for Supplemental Security Income ("SSI"). Ellis claims the ALJ's decision is not supported by substantial evidence because the ALJ failed to adequately consider her obesity and its effect on her other impairments in determining her Residual Functional Capacity[1] ("RFC"). See Plaintiff's Brief and Statement of Issues in Support of Request for Review at 6-11, Ellis v. Astrue, 09-1212 (E.D. Pa. Dec. 21, 2009). This case requires interpretation of Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503-05 (3d Cir. 2009), to determine when an ALJ must analyze obesity and its effect on other impairments.

---

[1] "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)).

After careful review, I find the ALJ was required to consider how Ellis' obesity, individually and in combination with other impairments, affected her ability to work. Therefore, the ALJ's decision was not supported by substantial evidence because the ALJ failed to properly consider and analyze Ellis' obesity. See Diaz, 577 F.3d at 503-05. Accordingly, I respectfully recommend Ellis' request for review be GRANTED and the matter be REMANDED to address Ellis' obesity and its impact on her other impairments and her ability to work.

BACKGROUND AND FACTUAL HISTORY

Ellis was 52 at the time of the ALJ's decision[2] and has a sixth grade education.[3] See R. 10; R. 24, 78. She has no relevant work history, R. 15, and lives with her daughter and grandchildren. R. 25, 73.

On April 20, 2006, Dr. Stephanie Flagg examined Ellis, who complained of ongoing bilateral knee pain when she climbed stairs and stood from a seated position. R. 100. Although there was no swelling in Ellis' knees and Ellis' February 2006 x-rays were normal, Dr. Flagg noted Ellis had pain in her bilateral patellofemoral grind[4] and diagnosed Ellis with patellofemoral

---

[2] Ellis is considered a "person closely approaching advanced age" under the Commissioner's regulations, which define this person as one who is between the ages of 50-54. See 20 C.F.R. § 416.963(b). Age is considered one of the relevant factors in determining whether a claimant can adjust to other work in the national economy. Advancing age is "an increasingly limiting factor in a [claimant's] ability to make such an adjustment," 20 C.F.R. § 416.963(a).

[3] Ellis attended special education classes. R. 24, 78

[4] The patellofemoral grind is where the front of the kneecap, patella, connects with the lower end of the thighbone, femur. Medline Plus, http://www.nlm.nih.gov/ medlineplus/encyclopedia (search "patellofemoral;" then follow "runners knee: patellofemoral pain" hyperlink) (last visited Apr. 20, 2010).

degenerative joint disease.[5]  R. 101.  Dr. Flagg prescribed pain medication and, after considering Ellis' weight, recommended Ellis lose 20-25 pounds.  Id.

On June 26, 2006, Ellis applied for SSI, alleging disability as of April 1, 2006 based on arthritis in the knees, hands, and wrist, diabetes, and high cholesterol.  R. 65, 74.  Obesity was not listed.  See id.  On September 11, 2006, after reviewing Ellis' application and medical records, Dr. Mark Bohn, a state agency consultant, concluded Ellis could do less than a full range of light work.  R. 133-38.  Dr. Bohn found the medical record supported Ellis' impairments of insulin dependent diabetes mellitus, hypertension, bilateral knee disorder, and obesity.  R. 138. However, he concluded Ellis' alleged limitations were not supported by medical evidence because she had pursued follow-up care and had received conservative and routine treatment for her impairments.  Id.  Ellis' application was denied on September 13, 2006, R. 42-46, and she timely sought a hearing, R. 47-50.

Ellis and vocational expert Sherry Crystal Turetski testified on January 21, 2008.  R. 21-40.  Ellis testified her weight fluctuated between 268-298 pounds and her present weight was 268 pounds.  R. 27.  Ellis also testified: she had difficulty walking because of the arthritis in her knees; could usually walk about two blocks before she had to rest; could stand for about ten-to-fifteen minutes before experiencing pain in the back of her legs and in her back; and sometimes was bed-ridden due to pain.  R. 29-30.

---

[5] Patellofemoral degenerative joint disease is arthritis of the knee; it is also known as osteoarthritis.  See Medline Plus, http://www.nlm.nih.gov/medlineplus/encyclopedia (search "patellofemoral degenerative joint disease;" then follow "osteotomy and unicompartmental knee arthroplasty" hyperlink) (last visited Apr. 20, 2010).

Ellis' claims were denied on February 28, 2008. R. 9-18. The ALJ applied the five-step sequential analysis[6] to determine Ellis' disability claim. R. 10-17. At step one, the ALJ found Ellis did not engage in substantial gainful activity at any time since the alleged onset of her disability. R. 10. At step two, the ALJ found Ellis suffered from the following severe impairments: insulin dependent diabetes mellitus, hypertension, bilateral knee disorders, and obesity. Id. At step three, the ALJ found Ellis' impairments or combination of impairments did not meet, or medically equal, one of the listed impairments.[7]

---

[6] The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims, which is codified 20 C.F.R. § 416.920. These steps are summarized as follows:

Step One: If the claimant is working and the work is substantial gainful activity, a finding of not disabled is directed. If not, proceed to Step Two. 20 C.F.R. § 416.920(a)(4)(i).

Step Two: If the claimant is found not to have a severe impairment, or severe combination of impairments, which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. If there is a severe impairment, proceed to Step Three. 20 C.F.R. § 416.920(a)(4)(ii).

Step Three: If the impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 to Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. If not, proceed to Step Four. 20 C.F.R. § 416.920(a)(4)(iii).

Step Four: If the claimant retains the RFC to perform past relevant work, a finding of not disabled is directed. If it is determined that the claimant cannot do the kind of work he or she performed in the past, proceed to Step Five. 20 C.F.R. § 416.920(a)(4)(iv).

Step Five: The Commissioner will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine if the claimant can adjust to other work or is disabled. 20 C.F.R. § 416.920 (a)(4)(v).

[7] The Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). The listing defines

The ALJ acknowledged that although obesity was deleted from the Listing of Impairments, he must assess Ellis' obesity at the other steps of the sequential evaluation process, such as determining Ellis' RFC, because the combined effect of obesity with other impairments can be greater than the effect of any single impairment. R. 11 (citing Social Security Ruling (SSR) 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002)). This was the ALJ's only discussion of Ellis' obesity.

In determining whether Ellis' knee arthritis constituted a major joint dysfunction under Listing 1.02, the ALJ noted: (1) although Ellis complained of bilateral knee pain and had been diagnosed with patellofemoral degenerative joint disease, tests of her knees were within normal limits, see R. 12; and (2) Ellis' April 2006 physical examination showed she had good range of motion in both knees, no swelling, and pain only when "climbing stairs and getting up from her seat," see R. 12.

The ALJ then found Ellis had the RFC to perform light work, which requires maximum lifting of twenty pounds and frequent lifting of ten pounds, sitting for up to six hours, and standing and walking for up to six hours, in an eight-hour work day, with occasional bending, kneeling, crouching, crawling and climbing. R. 13. The ALJ did not fully credit Ellis' testimony and concluded the objective medical evidence failed to support the alleged severity of Ellis' impairments. R. 14. The ALJ stated there was no significant evidence of musculoskeletal compromise affecting Ellis' ability to stand, walk, or sit to the degree alleged. Id. The ALJ

---

impairments that would prevent an adult, regardless of age, education, or work experience, from performing "any" gainful activity, not just "substantial" gainful activity. Id.; see 20 C.F.R. § 416.925(a) (purpose of the listings is to describe impairments "severe enough to prevent a person from doing any gainful activity"). The Listing was designed to operate as a presumption of disability making further inquiry unnecessary. Sullivan, 493 U.S. at 532.

credited Dr. Bohn's state agency assessment[8] that Ellis could do less than a full range of light work, because Dr. Bohn "provided specific reasons for his opinion."[9] R. 14. The ALJ did not list or discuss Dr. Bohn's reasons. See R. 14. The ALJ did not mention or discuss Ellis' obesity in determining her RFC.

At step four, the ALJ found Ellis had no past relevant work, R. 15, and at step five, the ALJ determined there are a significant number of jobs in the national economy Ellis could perform based on her age, education, work experience, and RFC, R. 15-16. The Appeals Council denied review on January 16, 2009. R. 1-3.

## DISCUSSION

I.   Legal Standard

I must determine whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The factual findings of the Commissioner must be accepted as conclusive if they are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)); Diaz, 577 F.3d at 503; Rutherford, 399 F.3d at 552. "Substantial evidence is 'more than a mere scintilla.'" Diaz, 577 F.3d at 503 (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[8] Dr. Bohn is a non-examining source, an acceptable medical source who has not examined the claimant but who provides a medical opinion in the case. 20 C.F.R. §§ 416.902. Testimony from a non-examining source must be considered by the ALJ, but is not entitled to deference. See 20 C.F.R. §§ 416.927(f).

[9] Dr. Bohn offered little explanation to support his opinion, which primarily consisted of check boxes on a medical form. R. at 133-38. Such forms constitute "weak evidence at best." See Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).

6

conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Diaz, 577 F.3d at 503. I may not weigh the evidence or substitute my own conclusions for that of the ALJ. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. Diaz, 577 F.3d at 506. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). At the same time, however, I must remain mindful that "leniency [should] be shown in establishing claimant's disability." Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

In addition, I retain "plenary review over the ALJ's applications of legal principles." Payton v. Barnhart, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, S.J.) (citing Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995)). Thus, I can overturn an ALJ's decision based on an incorrect legal standard even if I find it supported by substantial evidence. Id. (citing Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983)).

A claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905; Diaz, 577 F.3d at 503 (citing Burnett, 220 F.3d at 118). The claimant satisfies her burden by showing an inability to return to her past relevant work. Rutherford, 399 F.3d at 551. Once this showing is made, the burden shifts to the Commissioner

to show the claimant, given her age, education, and work experience, has the ability to perform specific jobs existing in the economy. 20 C.F.R. § 416.920; see Rutherford, 399 F.3d at 551.

II.  The ALJ Failed to Properly Evaluate Ellis' Obesity and Its Effect on Other Impairments.

The ALJ has the duty to evaluate all relevant evidence in the record. Fargnoli, 247 F.3d at 41; Burnett, 220 F.3d at 121; Cotter v. Harris, 642 F.2d 700, 704, 706 (3d Cir. 1981). The ALJ may not make speculative inferences from medical evidence, see e.g., Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), and cannot reject evidence for no reason or for the wrong reason, Diaz, 577 F.3d at 505. Therefore, the ALJ must explain the evidence supporting his findings and the reasons for discounting the evidence he rejects, id. at 505-06; Cotter, 642 F.2d at 705-06, so the reviewing court can determine if significant probative evidence was improperly rejected or simply ignored, Burnett, 220 F.3d at 121; Cotter, 642 F.2d at 706-07.

The ALJ must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." See SSR 02-1p, 67 Fed. Reg. at 57860. Additionally, the ALJ must assess "the combined effects of obesity and other severe impairments" when making a disability determination. Diaz, 577 F.3d at 503-04; Rivera v. Comm'r of Soc. Sec., 320 Fed. Appx 128, 130 (3d Cir. 2009); Rutherford, 399 F.3d at 552.

Remand is required where a claimant alleges obesity, the ALJ finds obesity is a severe impairment, and the ALJ fails to evaluate obesity when determining the RFC. See Diaz, 577 F.3d at 504-06. The United States Court of Appeals for the Third Circuit has not addressed whether remand is necessary when the claimant does not assert obesity, the ALJ finds claimant's obesity is a severe impairment, but nevertheless fails to analyze the obesity and its effect on other

8

impairments. For the following reasons, Diaz requires remand once the ALJ finds obesity is a severe impairment, but fails to analyze it, regardless whether claimant initially asserted it.

First, Diaz requires a thorough analysis of all severe impairments. Id. Its holding suggests that once an ALJ characterizes obesity as a severe impairment, the ALJ must assess obesity and its effect on claimant's other impairments and work ability. Id. ("the ALJ having recognized obesity as an impairment should determine in the first instance whether, and to what extent, [claimant's] obesity, in combination with her asthma, diabetes, arthritis, back pain, and hypertension, impacted her workplace performance."). Second, SSR 02-1p directs an ALJ to analyze obesity in combination with other impairments, regardless whether the ALJ found obesity was a severe impairment.[10] See Rivera, 320 Fed. Appx. at 130 (citing SSR 02-1p, 67 Fed. Reg. at 57860) (ALJ did not find obesity severe but nevertheless analyzed obesity in combination with other impairments). The ALJ is not required to discuss obesity if, however, the claimant does not identify obesity as an impairment, the ALJ does not cite it, and no evidence supports its effect on workplace performance. Rutherford, 399 F.3d at 552-53.

Accordingly, when an ALJ finds obesity is a severe impairment, the ALJ must analyze its effect, individually, and in combination with claimant's other impairments, on her workplace function at every step of the sequential process. See Diaz, 577 F.3d at 504-05; Zavilla v. Astrue, 2009 WL 3364853, at *17-18 (W.D. Pa. Oct. 16, 2009) (although claimant did not assert obesity, the ALJ was required to consider obesity and its effect on other impairments because the ALJ

---

[10] As noted in Diaz, SSR 02-1p did not materially amend its predecessor, SSR 03-p, which stated that obesity may increase the severity of coexisting or related impairments and instructed adjudicators to consider obesity at each sequential step. See Diaz, 577 F.3d. at 503; see also SSR 03-p, 65 Fed Reg. at 31041.

acknowledged claimant's obesity was relevant in determining her work capacity); cf. Rickabaugh v. Astrue, 2010 WL 1142041 (W.D. Pa. Mar. 24, 2010) (ALJ was not required to analyze obesity because claimant did not assert obesity and the ALJ did not expressly find that claimant's obesity was a severe impairment). An obesity analysis is especially important when the other impairments are musculoskeletal, respiratory, and cardiovascular impairments. Diaz, 577 F.3d at 504-05 (finding that claimant's obesity could exasperate these conditions).

After finding Ellis' obesity was a severe impairment, see R. 10, the ALJ failed to address obesity and its effect on her other impairments. The ALJ's severity finding triggered an obligation to discuss Ellis' obesity, individually and in combination with diabetes, hypertension, and bilateral knee disorders. See Diaz, 577 F.3d at 504. The ALJ referenced obesity only in step three when acknowledging his legal obligation to consider the impairment and its effect on other impairments.[11] R. 11. This reference, however, did not include any discussion of Ellis' obesity or how her obesity affected her bilateral knee disorder. Id. For example, the ALJ did not explain how Ellis' obesity affected her ability to walk and stand during an eight-hour workday – a critical issue in whether she had the RFC to stand and walk for up to six hours a day. See R. 13. It was legally insufficient to merely acknowledge an obligation to assess Ellis' obesity without further discussion or analysis. See Diaz, 577 F.3d at 504.

Even assuming the ALJ failed to explicitly consider Ellis' obesity, the Commissioner maintains Ellis has not shown remand would result in a different outcome. See Defendant's Response to Request for Review of Plaintiff at 11-12, Ellis v. Astrue, No. 09-1212 (E.D. Pa. Jan.

---

[11] By referencing his legal duty, the ALJ subjectively may have included obesity in his analysis. Absent an explicit discussion and analysis, however, the ALJ has precluded judicial review. See Burnett, 220 F.3d at 119-22.

20, 2010) (citing Rutherford, 399 F.3d at 553). The court in Rutherford found remand was unnecessary because consideration of the impairment would not affect the outcome of the case. Id. This holding, however, was based on the absence of evidence that obesity was a severe impairment and affected the ability to work. See Rutherford, 399 F.3d at 553. Ellis, however, was diagnosed with patellofemoral degenerative joint disease and Dr. Flagg suggested she lose weight to help her condition and ease her pain. R. 100-01. This is logical because obesity may exasperate joint dysfunction. See Diaz, 577 F.3d at 504. Unlike Rutherford, the ALJ's consideration of Ellis' obesity and its effect on her other severe impairments, in conjunction with her lack of past relevant work, her age, and limited education, may affect the outcome of this case.

        Accordingly, I make the following:

# R E C O M M E N D A T I O N

AND NOW, this 29th day of April, 2010, it is respectfully recommended that Ellis' request for review be GRANTED and the matter be REMANDED to the Commissioner for further review consistent with this report and recommendation. The Commissioner may file objections to this Report and Recommendation within 14 days after being served with a copy thereof. See Fed. R. Civ. P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

                              BY THE COURT:

                              \s\ TIMOTHY R. RICE
                              TIMOTHY R. RICE
                              UNITED STATES MAGISTRATE JUDGE